UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | | |
|---|---|---|
| JACQUELYN HETTEBURG, Individually and as the Natural Parent and Guardian of CARTER FETTERS, | ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 2: 11-158-DCR |
| V. | ) ) | |
| STANDARD HOMEOPATHIC COMPANY, et al., | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Currently pending before the Court is a Motion to Dismiss by Defendants Standard Homeopathic Company and Hyland's, Inc. [Record No. 5] The defendants argue that the Complaint fails to state a claim upon which relief can be granted. For the reasons explained below, their motion will be denied.

**I.**

The following facts are set forth in the Complaint. The defendants manufacture and sell a product known as Hyland's Teething Tablets, a homeopathic remedy for symptoms associated with teething in children. [Record No. 1, p. 2 ¶¶ 6, 8] Plaintiff Jacquelyn Hetteburg purchased the tablets for her infant son, Carter Fetters.[1] [*Id.*, p. 3 ¶ 18] She began administering the tablets

---

1   As noted by the defendants, the Complaint is somewhat unclear regarding the identity of the plaintiffs. [*See* Record No. 17, p. 1 n.1] While the caption indicates that Jacquelyn Hetteburg is the sole plaintiff, suing on behalf of herself and her minor son, paragraph 4 of the Complaint states that "Plaintiff Jacquelyn Hetteburg and Plaintiff Carter Fetters may be referred to herein collectively as 'Plaintiffs.'"

-1-

to Carter in June or early July 2010, giving him two tablets three to four times a day as directed by the product label. [*Id.*, pp. 11-12 ¶ 62; *see id.*, p. 4 ¶ 23] On three occasions in August 2010, while using the tablets, Carter was taken to the emergency room with seizures. [*Id.*, p. 12 ¶¶ 64-67; *see id.*, p. 3 ¶ 18] Each time, the diagnosis was "myoclonic jerks of unknown etiology." [*Id.*, p. 12 ¶¶ 64, 66; *see* ¶ 67] A neurologist who provided follow-up treatment in late September 2010 noted that Carter's seizures "were not epileptic in nature." [*Id.*, p. 13 ¶ 68]

On October 23, 2010, the Food and Drug Administration (FDA) issued a consumer safety alert regarding Hyland's Teething Tablets. [*Id.*, p. 7 ¶ 37] Warning that the tablets "'may pose a risk to children,'" the FDA recommended that consumers cease using them and dispose of any remaining quantities. [*Id.* (quoting FDA Consumer Safety Alert, *Hyland's Teething Tablets May Pose a Risk to Children* (Oct. 23, 2010))] The same day, the defendants voluntarily recalled the tablets. [*Id.* ¶ 36]

The basis for the FDA's warning was an analysis by the agency that showed the tablets contained "'inconsistent amounts of belladonna,'" a substance that was intended to be present in the tablets in small amounts but that is harmful in large doses. In addition, the FDA had received reports of children experiencing "'adverse events . . . consistent with belladonna toxicity'" when taking Hyland's Teething Tablets. [*Id.*, pp. 7-8 ¶ 38 (quoting FDA Consumer Safety Alert)] The FDA warning "advised consumers 'to consult with their health care professional[s] if their child[ren] experience[d] symptoms such as seizures, difficulty breathing, lethargy, excessive sleepiness, muscle weakness, skin flushing, constipation, difficulty urinating,

---

[Record No. 1, p. 2 ¶ 4; *see id.*, p. 1]

or agitation after using Hyland's Teething Tablets.'" [*Id.*, p. 8 ¶ 38 (quoting FDA Consumer Safety Alert)] It further stated that "'[a]n ongoing inspection'" of the defendants' manufacturing facility "'indicate[d] substandard control of the manufacturing operation.'" [*Id.* ¶ 40 (quoting FDA Consumer Safety Alert)]

Hetteburg filed this action on August 11, 2011, asserting claims of strict products liability, negligence, breach of express warranty, breach of implied warranty, negligent misrepresentation and fraud, and violation of the Kentucky Consumer Protection Act. [*Id.*, pp. 15-24] Each count of the Complaint incorporated by reference the preceding allegations. [*E.g.*, *id.*, p. 15 ¶ 84] With respect to each claim, Hetteburg alleged that she and her son had suffered injuries as a result of the defendants' actions or omissions. [*Id.*, p. 17 ¶¶ 94-95; *id.*, pp. 18-19 ¶ 104; *id.*, pp. 19-20 ¶¶ 109-10; *id.*, p. 20 ¶¶ 116-17; *id.*, p. 22 ¶¶ 128-29; *id.*, p. 23 ¶¶ 138-39] Notwithstanding these allegations, the defendants maintain that the Complaint is deficient because it fails to adequately assert a causal connection between their conduct and any injuries suffered by Hetteburg and her son. Their contention is without merit.

## II.

In evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the

complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

According to the defendants, *Twombly* and *Iqbal* require the Court to disregard the bulk of the Complaint in this case. [Record No. 5, p. 5]  "[C]onclusory allegations that the Teething Tablets were 'the direct and proximate cause' of the injuries alleged," they argue, must be ignored. [*Id.*, p. 7]  And since causation is an element of each claim, by the defendants' reasoning, the Complaint falls short under Rule 12(b)(6). [*Id.*]

As indicated above, however, every count of the Complaint incorporates by reference the paragraphs before it.  Thus, each cause of action is supported by fourteen pages of factual allegations. [*See* Record No. 1, pp. 1-15]  Stated generally, those allegations are as follows:

- The defendants manufacture and sell Hyland's Teething Tablets.

- Carter Fetters ingested Hyland's Teething Tablets.

- After ingesting the tablets, Carter suffered from non-epileptic seizures.

- Seizure is a symptom of belladonna toxicity.

- Hyland's Teething Tablets contained belladonna.

- FDA testing revealed inconsistencies in the amount of belladonna in Hyland's Teething Tablets.

- Other children had apparently suffered belladonna toxicity after ingesting Hyland's Teething Tablets.

On these facts, a plausible inference — indeed, the *most* plausible inference — is that Carter's seizures were caused by belladonna in the Hyland's Teething Tablets he ingested.

The Sixth Circuit's decision in *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278 (6th Cir. 2010), is instructive. In *Fabian*, the defendant was the manufacturer and distributor of a motorcycle helmet known as the AF-50, which came in sizes small and large. *Id.* at 279. In 2000, the large AF-50 helmet was subjected to a random safety test by the National Highway Traffic Safety Administration (NHTSA). It passed. In 2002, however, the small AF-50 failed two components of the same test. *Id.* Fabian purchased two large AF-50 helmets in 2004. *Id.* at 280. Three years later, he sold one helmet to a friend, who sustained fatal brain trauma in a motorcycle crash while wearing it. *Id.* Fabian alleged that Fulmer Helmets had misrepresented the safety of its product. *Id.*

The district court granted Fulmer Helmets' motion to dismiss for failure to state a claim. Its reasoning, as summarized by the Sixth Circuit, was as follows:

> (1) NHTSA performed a safety test on a large AF-50 helmet in 2000, and the helmet passed all components of the test; (2) NHTSA performed a safety test on a small AF-50 helmet in 2002, and the helmet failed at least one component of the test; and (3) because Fabian premise[d] his claim on the purchase of large AF-50 helmets, his claim [was] implausible on its face given that Fulmer Helmets *passed* a 2000 NHTSA test on a large AF-50 helmet.

*Id.* This reasoning was flawed, however, because "it turn[ed] on potential inferences, not necessary ones." *Id.* at 281. The facts alleged in Fabian's complaint gave rise to two reasonable inferences. The first, upon which the district court relied, was that the small and large helmets scored differently on the NHTSA safety tests because they performed differently — *i.e.*, that the difference in safety was related to the size of the helmet. *Id.* But a second, equally plausible,

inference was "that helmets of the same model, even if differently sized, perform the same." *Id.* Under the latter inference, "the failed 2002 test potentially exposed a defect in all AF-50 helmets, no matter their size." *Id.* Rejecting Fulmer Helmets' argument that the 2002 test bore no relevance to Fabian's claims involving the large helmet, the court explained:

> The company may have changed its design or manufacturing process for all AF-50s between 2000 and 2002, giving rise to a defect in all of its helmets and negating the relevance of the successful 2000 test result. Or the same test conducted on two randomly selected helmets (otherwise exactly the same) might yield different outcomes due to nothing more than natural statistical variances. The successful 2000 test thus may reflect an aberration unrelated to helmet size, while the failed 2002 test may point to a real flaw in all AF-50s.

*Id.* From the facts alleged in Fabian's complaint, it was reasonable to infer that Fulmer Helmets was liable, since "'common sense' tells us that a mass-manufactured consumer product . . . may utilize the same design (and carry the same flaw) regardless of its size." *Id.* (quoting *Iqbal*, 556 U.S. at 679) (citation omitted). Thus, the court concluded that "Fabian ha[d] 'nudged his claims . . . across the line from conceivable to plausible'" and was entitled to proceed to discovery. *Id.* (quoting *Iqbal*, 556 U.S. at 680) (omission in original).

Here, as in *Fabian*, the Complaint contains factual allegations from which the Court can reasonably infer the defendants' liability. Indeed, the inference is even stronger in this case. The defendants do not dispute that the FDA warning quoted in the Complaint pertains to the same product that Carter Fetters allegedly ingested. Instead, they contend that the Complaint is deficient because it fails to explain "how the *particular* Teething Tablets purchased by Jacquelyn Hetteburg and ingested by Carter Fetters" caused the alleged injuries.[2] [Record No. 5, p. 6

---

2   To the extent the defendants object to a lack of proof regarding whether the tablets Carter ingested actually contained unsafe amounts of belladonna or whether his seizures were in fact the result of belladonna

(emphasis added); *see id.*, p. 13] "Simply because the FDA purportedly found that *in some cases* the Teething Tablets had more belladonna than they should," the defendants assert, "it does not then follow that all Teething Tablets — and more importantly, the particular and specific Teething Tablets ingested by Carter Fetters — had higher amounts of belladonna." [*Id.*, p. 14] Yet *Fabian* teaches that "'common sense'" yields just such an inference. 628 F.3d at 281 (quoting *Iqbal*, 556 U.S. at 679). Because the Complaint alleges ample facts supporting the inference that the defendants are liable, it states a plausible claim for relief. *See Iqbal*, 556 U.S. at 678.

### III.

The defendants have not shown that the Complaint in this matter fails to state a claim upon which relief may be granted. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Plaintiffs' Complaint [Record No. 5] is **DENIED**.

This 6th day of July, 2012.



Signed By:
*Danny C. Reeves*  DCR
United States District Judge

---

toxicity, their argument is better suited to a summary judgment motion, not a motion under Rule 12(b)(6).